## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 7 |
| | ) | |
| Ralph A. Shifano, | ) | Case No. 12-11148(CSS) |
| | ) | |
| Debtor. | ) | |
| _____ | ) | |
| Ralph A. Shifano, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| Lendmark Financial Services, Inc. | ) | Adv. Proc. No. 12-50744 (CSS) |
| Household Bank, | ) | Adv. Proc. No. 12-50745 (CSS) |
| Commerce Bank, | ) | Adv. Proc. No. 12-50746 (CSS) |
| Credit One Bank, | ) | Adv. Proc. No. 12-50747 (CSS) |
| John Deere Finance Company, | ) | Adv. Proc. No. 12-50748 (CSS) |
| Merrick Bank. | ) | Adv. Proc. No. 12-50749 (CSS) |
| | ) | |
| Defendants. | ) | |

## OPINION[1]

BILLION LAW                                George L. Miller
Mark M. Billion                            1628 John F. Kennedy Blvd.
922 New Road, 2nd Floor                    Suite 950
Wilmington, DE  19805                      Philadelphia, PA  19103-2110

**Counsel for Debtor**                     **Trustee**


Dated: January 8, 2013

Sontchi, J. _____

---

[1] This Opinion constitutes the Court's findings of fact and conclusions of law pursuant to Federal Rule of Bankruptcy Procedure 7052.

## INTRODUCTION

The issue before the Court is under what circumstances, if at all, may an individual Chapter 7 debtor (as opposed to a trustee) pursue avoidance actions for the debtor's own benefit (as opposed to for the benefit of the debtor's estate). The debtor may bring such actions for his or her own benefit *in limited circumstances*. More specifically, in addition to satisfying the normal pleading standards governing such an action, the debtor must establish standing under section 522(h) of the Bankruptcy Code. Standing only arises if the debtor establishes:

(1) the transfer to be avoided cannot have been a voluntary transfer of property by the debtor;

(2) the debtor cannot have concealed the property;

(3) the trustee cannot have attempted to avoid the transfer;

(4) the debtor must exercise an avoidance power usually used by the trustee that is listed within section 522(h); and

(5) the transferred property must be of a kind that the debtor would have been able to exempt from the estate if the trustee (as opposed to the debtor) had avoided the transfer pursuant to one of the statutory provisions in section 522(g).

The standing issue arises in this case in connection with a motion to reopen a Chapter 7 case in order for the debtor to pursue on his own behalf previously filed preference actions under section 547 of the Code. The Court will grant the motion to reopen, provided, however, that the debtor must amend its existing complaints within 28 days to aver standing under section 522 and to more fully plead the elements of the actual avoidance actions. Any future avoidance actions filed by the debtor in this case

(or any debtor pursuing this avenue) must, in addition to asserting the elements of the underlying action, allege standing under section 522(h).[2]

## STATEMENT OF FACTS

On April 2, 2012, Mr. Ralph A. Schifano (the "Debtor") filed a voluntary petition for relief under Chapter 7 of Title 11 of the United States Code.  George L. Miller was appointed as trustee of the Debtor's estate.  On July 2, 2012, the Debtor was granted a discharge under 11 U.S.C § 727 and the bankruptcy case was closed on September 19, 2012.

Prior to the Debtor's discharge and the closure of the case, on May 25, 2012, the Debtor filed five separate adversary proceedings to avoid and recover preferential transfers pursuant to sections 547 and 550 and disallow claims under section 502(d) and (j) (collectively, the "Preference Actions").[3]   Thereafter, in consultation with the Court, the Debtor filed notices of voluntary dismissal without prejudice of the Preference Actions.[4]  Subsequently, the Preference Actions were closed by the Court.

In each of the Preference Actions, the Debtor filed an Amended Complaint with bare-bone allegations in support of three counts: (i) avoidance of preferential payments under section 547(b); (ii) recovery of the preferential payments under section 550; and (iii) disallowance of the transferee's claims under section 502(d) and (j).  None of the

---

[2] As with any complaint, the section 522 assertions must satisfy the *Twombly/Iqbal* standards.  *Bell Atlantic Corp v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), respectively. *See also Fowler v. UPMC Shadyside*, 578 F.3d 203 (3d Cir. 2009).

[3]  Adv. Case Nos. 12-50745, 12-50746, 12-50747, 12-50748 and 12-50749.

[4]  Adv. Case No. 12-50745 (D.I. 7); Adv. Case No. 12-50746 (D.I. 5); Adv. Case No. 12-50747 (D.I. 5); Adv. Case No. 12-50748 (D.I. 5); Adv. Case No. 12-50749 (D.I. 5).

Amended Complaints references, let alone makes any allegations, relating to section 522.[5]

In October 2012, the Debtor moved to reopen ("Motion to Reopen") his case for the sole purpose of pursuing various preference actions (presumably including, but not limited to, the Preference Actions).  The Court initially heard the Motion to Reopen at a hearing held on November 14, 2012.  Subsequently and in response to the Court's request, the Debtor filed a letter brief in support of the Debtor's position and propriety of pursuing the Preference Actions. The Court held another hearing on the Motion to Reopen on December 12, 2012.  After discussion with Debtor's counsel regarding the Motion to Reopen, the Court took the motion under advisement.

## LEGAL ANALYSIS

### A.  Motion to Reopen

The issue directly before the Court is whether to grant the Motion to Reopen to allow the Debtor to pursue the Preference Actions.  That decision, however, rests on whether the Debtor may, in fact, assert those actions.  Nonetheless, we start with the standards governing a motion to reopen a Chapter 7 case.

---

[5] The Debtor asserts in his letter brief referenced below that he did not reference section 522 nor pled its elements because "a) I believe that the record supporting the action makes these elements clear, and b) for strategic reasons, [these pleadings were] designed to remain as faithful to convention as possible."  As discussed below, in a case where the debtor is asserting standing under section 522 to bring avoidance actions on his or her on behalf the debtor must sufficiently plead the elements required to establish that standing.  As to the second point, willfully failing to plead the required elements in this case for "strategic purposes" is wholly unacceptable.  Pleading under the Federal Rules of Civil Procedure is not a game of "gotcha."  Rather, counsel is required to fully and fairly plead the facts and law applicable to his client's request for relief. *See eg., Sterten v. Option One Mortgage Corp. (In re Sterten)*, 546 F.3d 278, 285 (3rd. Cir. 2008).

Under section 350(b) of the Code, "[a] case may be reopened in the court in which such case was closed to administer assets, to *accord relief to the debtor*, or for other cause."[6]  "Whether to reopen a closed bankruptcy case is committed to the discretion of the bankruptcy court."[7]

When a former debtor seeks to reopen a closed bankruptcy case the court "may consider a number of *nonexclusive factors*."[8]  These include "(1) the length of time that the case has been closed; (2) whether the debtor [or movant] would be entitled to relief if the case were reopened; and (3) the availability of nonbankruptcy courts, such as state courts, to entertain the claims."[9]  Courts generally look to whether reopening that case will benefit creditors and may deny the motion "when no clear benefit is shown to creditors."[10]  Nonetheless, a benefit to creditors is not required.  Indeed, "relief to the bankrupt is explicitly recognized as a proper cause for re-opening."[11]

In *Bittel v. Yamato Intern. Corp.*,[12] the Sixth Circuit Court of Appeals addressed the issue of whether potential recovery solely to a debtor would justify reopening a case, which the court answered in the affirmative.

---

[6]  11 U.S.C. § 350(b) (emphasis added).  *See also* Fed. Rule Bankr. P. 5010 ("A case may be reopened on motion of the debtor or other party in interest pursuant to §350(b) of the Code.  In a chapter 7 . . . case a trustee shall not be appointed by the United States trustee unless the court determines that a trustee is necessary to protect the interests of creditors and the debtor or to insure efficient administration of the case.").

[7]  *In re Canoe Mfg. Co., Inc.*, 466 B.R. 251, 261 (Bankr. E.D. Pa. 2012).

[8]  *Id.* at 262 (quoting *Redmond v. Fifth Third Bank*, 624 F.3d 793, 798 (7th Cir. 2010)).

[9]  *Id.*

[10]  *In re Nelson*, 100 B.R. 905, 907 (Bankr. N.D. Ohio 1989).

[11]  *Donovan v. LaPorta (In re LaPorta)*, 26 B.R. 687, 690 (Bankr. N.D. Ill. 1982).

[12]  *Bittel v. Yamato Int'l Corp.*, 70 F.3d 1271 (table), 1995 WL 699672 (6th Cir. Nov. 27, 1995).

> The Bittels urge us not to put too much weight on the trustee's opinion that a recovery for the general creditors is unlikely, noting that because they did not use all of their allowable exemptions, they would have to recover more than $7,000 before any money would go into the general pool of assets for creditors. Therefore, so long as the recovery is modest, a successful suit could benefit them as the debtors, even if it did not aid the creditors. . . . [T]he estate would suffer disruption only in the event the Bittels recovered significant damages by the bringing of the suit, in which case the estate could redistribute the assets to the creditors.[13]

The Sixth Circuit also noted that allowing the case to be reopened solely for the benefit of a debtor was consistent with public policy as a monetary recovery for a debtor would assist that "debtor's financial rehabilitation."[14] That said, the likelihood of some recovery to debtor and/or creditors is required and courts have denied motions to reopen where the lawsuit to be brought would be frivolous.[15]

In this case, the question is whether there is some likelihood the Preference Actions will result in a monetary recovery for the Debtor. If the Debtor lacks standing, the Preference Actions would clearly be frivolous and the Motion to Reopen should be denied. Similarly, if the avoidance actions themselves, *i.e.*, the claims under sections 547(b), 550 and 502(d) and (j), are unlikely to result in a monetary recovery for the Debtor, the motion should be denied.

---

[13] *Id.* at *3.

[14] *Id.* at *2.

[15] *Nelson*, 100 B.R. at 907  (denying the motion to reopen reasoning that the "motion was filed more than five years after Debtors' petition and six months after the close of Debtors' case. Based upon these facts, the court finds that Debtors lack diligence in this matter. Additionally, the cause of action which Debtors seek to add has been adjudicated by the Henry County Court of Common Pleas.").

**B.  Standing for a Trustee to Pursue Avoidance Actions**

"Avoidance actions" as the term is generally used are causes of action that arise under Chapter 5 of the Code.  For example, avoidance actions may allow a trustee to avoid transfers of property under a variety of theories such as preference (§ 547), fraudulent conveyance (§ 548), and unauthorized post-petition transfer (§ 549).  Section 550 of the Code, in turn, allows a trustee to recover the property subject to the avoided transfer.  In each instance, the applicable statute expressly states that "the trustee may" exercise the right granted under the statute.

In a Chapter 7 case, the "debtor" and the "trustee" are two distinct persons.[16] The Code specifies certain rights or obligations are applicable to the debtor and others are applicable to the trustee.  The question is whether the designation of the trustee as the person with standing to pursue avoidance actions precludes the Chapter 7 debtor from doing so.

The Supreme Court addressed this precise issue in *Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.*[17]  The specific issue in that case was whether only the trustee could invoke section 506(c) of the Bankruptcy Code, which provides that "*the trustee may* recover from property securing an allowed secured claim the reasonable, necessary costs and expenses of preserving, or disposing of, such property to the extent of any benefit to the holder of such claim."  The Supreme Court noted that while the

---

[16] In contrast, in Chapter 11 case a "debtor" is a "debtor in possession" unless there is a separate person serving as a trustee. 11 U.S.C. § 1101.  Moreover, "a debtor in possession shall have all the rights . . . and powers, and shall perform all the functions and duties of a trustee serving in a case under this chapter." 11 U.S.C. § 1107(a).  As such, the debtor is the trustee in Chapter 11 (unless a separate trustee is appointed).

[17] *Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.*, 530 U.S. 1 (2000).

statute says the trustee may seek recovery it does not say that others may not. Nonetheless, the Court held that it was the proper inference that the trustee is the only party empowered to invoke the provision.[18]

As the avoidance actions at issue specifically provide that "the trustee may" invoke the statute's power, the debtor may not. Thus, under the terms of the applicable statute, a Chapter 7 debtor does not have standing to pursue avoidance actions and this Debtor does not appear to have standing to pursue the Preference Actions.

Notwithstanding the foregoing, however, a debtor may bring avoidance actions in *limited circumstances*.

## C.  Standing for a Debtor to Pursue Avoidance Actions.

Section 522 of the Bankruptcy Code governs exemptions.  The Supreme Court recently and succinctly summarized the operation of exemptions:

> When a debtor files a Chapter 7 bankruptcy petition, all of the debtor's assets become property of the bankruptcy estate, subject to the debtor's right to reclaim certain property as "exempt."  The Bankruptcy Code specifies the types of property debtors may exempt as well as the maximum value of the exemptions a debtor may claim in certain assets. Property a debtor claims as exempt will be excluded from the bankruptcy estate "[u]nless a party in interest" objects.[19]

Among the exemptions available to a Chapter 7 debtor in Delaware is the so-called "wildcard exemption" under 10 Del.C. § 4914(b).  Under the wildcard exemption, a debtor may "exempt from the bankruptcy or insolvency estate . . . personal property . . . having an aggregate fair market value of not more than $25,000."  That personal

---

[18] *Id*. at 5.

[19] *Schwab v. Reilly*, 130 S.Ct. 2652, 2657 (2010) (citations omitted).

property can include the proceeds of avoidance actions up to the amount of the aggregate cap of $25,000.

Under section 704(1) of the Code, the trustee of a Chapter 7 debtor has the general duties of marshalling all available, *i.e.*, non-exempt, property, reducing it to money, distributing it to creditors, and closing up the estate.[20]  Under section 326 of the Code, a Chapter 7 trustee's compensation is calculated as a percentage of "all moneys disbursed or turned over in the case by the trustee to parties in interest, *excluding the debtor*, but including holders of secured claims."  Thus, even if it is likely that the Chapter 7 trustee would be successful in recovering property through one or more avoidance actions, he or she has no incentive to pursue those avoidance actions if it is likely that the debtor would be the sole beneficiary.  Indeed, in such an instance, the Chapter 7 trustee would be working for free for the debtor.

In response to the disincentive for a trustee to exert his or her sole exclusive standing to bring avoidance actions solely for the benefit of the debtor, Congress enacted section 522(h) of the Code to grant Chapter 7 debtors the limited right to pursue avoidance actions to aid such debtors in maximizing the property available for exemption.[21]   Under section 522(h), a Chapter 7 debtor has standing to pursue avoidance actions if each prong of a five-part test are satisfied.

---

[20] 11 U.S.C. § 704(1).

[21] Section 522(h) may also be available for Chapter 13 debtors.  *In re* Ryker, 315 B.R. 664, 667 (Bankr. D. N.J. 2004) (Only the chapter 13 trustee may use the avoidance powers, except as provided in section 522(h)).  However, the issue before this Court involves a debtor under Chapter 7.  The Court makes no ruling as to the availability nor application of section 522(h) under Chapter 13 of the Code.

(1)     the transfer to be avoided cannot have been a voluntary transfer of property by the debtor;

(2)     the debtor cannot have concealed the property;

(3)     the trustee cannot have attempted to avoid the transfer;

(4)     the debtor must exercise an avoidance power usually used by the trustee that is listed within section 522(h); and

(5)     the transferred property must be of a kind that the debtor would have been able to exempt from the estate if the trustee (as opposed to the debtor) had avoided the transfer pursuant to one of the statutory provisions in section 522(g).[22]

Courts have held that each prong of this five-part test must be met to confer standing on the debtor.[23]   In this case, in order for the debtor to prevail on the motion to reopen, he must show there is a reasonable likelihood he will be able to establish standing.

### 1.     Were the Transfers Voluntary?

The first element that must be satisfied is that the transfer of property by the debtor must have been involuntary. "Voluntary transfers are excepted from a debtor's avoidance rights so that a debtor does not receive a windfall and benefit from his own

---

[22] *DeMarah v. United States (In re DeMarah)*, 62 F.3d 1248, 1250 (9th Cir. 1995) (citing 11 U.S.C. §§ 522(g) and (h)) (The Court of Appeals for the Ninth Circuit held that, although the debtor had met all the requirements under § 522(h) and that the claim secured by such lien was of the kind subject to avoidance under § 724(a), § 522(c)(2)(B) precluded avoidance, in whole or in part, a properly filed federal tax lien on exempt property.).  *See also In re Owens*, 379 B.R. 558, 563 (Bankr. W.D. Pa. 2007) *aff'd sub nom. U.S. Dept. of Treasury v. Owens*, 390 B.R. 808 (W.D. Pa. 2008) ("We regard *DeMarah* as well-reasoned and believe that the Third Circuit would so conclude if the question were before it. We therefore conclude that a chapter 7 debtor has standing to bring a § 549(a) action in accordance with § 522(g) and (h) if certain conditions are met."); *Myers v. Household Finance Corp. (In re Myers)*, 262 B.R. 445, 449 (Bankr. N.D. Ind. 2001) (holding that §522(h) "gives bankruptcy debtors to avoid certain transfers. Section 522(h) was designed to give debtors the opportunity to exercise rights they would not otherwise have. The transfers it allows them to challenge involve either a cause of action created by the Bankruptcy Code or rights that only exist because the Bankruptcy Code gives them to the debtor. For example, outside of bankruptcy, no one would allow a debtor to recover a payment or avoid a lien one of its creditors was able to obtain simply because it allowed that creditor to fare better than other creditors; yet, by giving the debtor the opportunity to avoid preferential transfers, through § 547, the Bankruptcy Code does.").

[23] *Myrick v. Amerus Bank (In re Myrick)*, 98-1099, 2000 WL 35798977, *4 (Bank. S.D. Iowa Feb. 23, 2000).

voluntary act."[24]   The question, however, is what constitutes an "involuntary transfer" under section 522(g)?[25]

The case of *Huebner v. Trapp (In re Hubener)* is instructive.[26]  In that case the future debtor's landlord received a judgment in the amount of $1,566.20 against the debtor in an action for back rent.   Shortly thereafter, the landlord's attorney and the debtor entered into a written agreement regarding satisfaction of the judgment, under which the debtor was to pay $50 per month to the landlord.  In addition, the debtor executed a wage assignment in favor of the landlord for $25 per week.  The wage assignment was to be held by landlord's attorney and was only to be filed if the debtor defaulted on her monthly payment of $50.   Five months later the debtor defaulted and the wage assignment was filed with the debtor's employer.  The landlord received $300 in total under the wage assignment.  The debtor than filed bankruptcy and sought to recover the $300 as avoidable preferences under sections 522(h) and 547 (the wage assignment payments had been made in the 90 day preference period).  The court held a trial on the preference claim where the sole issue was whether the payments to landlord through the wage assignment were involuntary under section 522(h).

The *Huebner* court began its analysis by noting the that "Bankruptcy Code is silent about what constitutes a voluntary transfer under 11 U.S.C. § 522(g). The legislative history of this section gives one example of an involuntary transfer (the

---

[24] *In re Shawhan*, BAP NV-08-1049-JUKUK, 2008 WL 8462964 at * 10 (B.A.P. 9th Cir. July 7, 2008).

[25] The involuntary transfer element actually appears in section 522(g) but is incorporated in section 522(h).

[26] *Huebner v. Trapp (In re Hubener)*, 18 B.R. 193 (Bankr. W.D. Wisc. 1982).

fixing of a judicial lien), but provides no further illumination."   The court then referenced the definition in Black's Law Dictionary of "voluntary" before analyzing the cases, in most of which the transfer "was deemed voluntary or involuntary with no discussion."

The court went on to hold that the "one example given in the legislative history . . . of an involuntary transfer (the fixing of a statutory lien) indicates that Congress intended to allow recovery of only those transfers beyond debtor's personal control." The court ruled that the debtor "had significant control of whether the transfers would take place, both at the time of the agreement and when the assignment became effective. She signed the agreement and the wage assignment without unusual duress and understood that should she fail to make the payments agreed to, the wage assignment would be filed with her employer."   Of course, in entering the agreement the debtor understood that the landlord might take other steps to enforce his judgment.  As such, her motivation was "to receive greater leniency under the agreement in repaying the debt than she would have if the creditor had used garnishment or other means to secure payment of his judgment."   But, the court held that was not enough to render the transfer involuntary.   Indeed, the court concluded that "to hold that a transfer is involuntary merely because the transferee receives something of value or avoids an unpleasant consequence as a result of the transfer, would result in no transfer short of a gift being considered voluntary. This result does not seem to have been intended by Congress."

Transfers made outside a debtor's control such as the fixing of a lien or entry of a wage garnishment order over an objection are clearly involuntary.  But, courts have struggled in delineating when transfers made under the debtor's control (such as the agreement and the wage assignment in *Huebner*) are nonetheless involuntary.[27]  For example, courts have correctly held that in circumstances involving fraud or material misrepresentation transfers within the debtor's control are not voluntary.[28]  Others have gone too far, holding that a transfer is voluntary only if a debtor has knowledge of "essential facts" and is "free from the persuasive influence of another," and chooses of her "own free will to transfer the property to the creditor."[29]  What is clear to this Court, however, is that for a transfer to be involuntary evidence of something significantly more is needed than a future debtor simply making a transfer to a creditor to avoid an unpleasant consequence.

In this case, the Debtor asserts that the transfers he is seeking to avoid were not voluntary as the Debtor was insolvent at the time of the transfers.  This is insufficient on its face to establish that the transactions were involuntary.  The test is not one of insolvency.  In order to satisfy this prong the Debtor must provide *particularized allegations* as to whether the transaction was actually or constructively involuntary.

---

[27] Compare *Ross v. Philadelphia Housing Authority (In re Ross)*, 97-10870DWS, 1997 WL 331830, *3 (Bankr. E.D. Pa. June 10, 1997) (finding that the legal compulsion of an eviction action was the cause of the transfers rather than the debtor's free will). *See also Smith v. Bank of New York (In re Smith)*, 366 B.R. 149, 153 (Bankr. D. Colo. 2007) ("§ 522(h) does not confer standing on this Plaintiff to bring an action seeking to avoid this voluntary transfer of a lien."); *In re Hoffman*, 96 B.R. 46, 48 (Bankr. W.D. Pa. 1988) (sale of house to avoid foreclosure was involuntary); *In re Taylor*, 8 B.R. 578 (Bankr. E.D. Pa.1981) (payment to creditor of $800 following repeated collection calls and threat to execute on house not voluntary).

[28] *Shawhan*, *supra*.

[29] *Ross, supa*.

Based upon the record before the Court, the Debtor has not shown there is a reasonable likelihood he will be able to satisfy the first element of the standing test.

### 2.    Did the Debtor Conceal the Transfers?

Courts do not grant standing to debtors who hide their property from creditors. However, if the debtor lists the property on his or her schedules, courts have held that the property has not been concealed.[30]  In the Preference Actions that have been filed in this case, the Debtor seeks to avoid the following transfers.

| Transferee | Adv. Pro. No. | Date of Transfer | Amount of Transfer |
|---|---|---|---|
| Household Bank | 12-50745 | 2/16/12 | $860.98 |
| Commerce Bank | 12-50746 | 2/28/12 | $1,600.00 |
| Credit One Bank | 12-50747 | 2/16/12 | $616.21 |
| John Deere Finance Co. | 12-50748 | 2/16/12 | $1,800.00 |
| Merrick Bank | 12-50749 | 2/16/12 | $1,201.35 |

In each instance, the Debtor listed the above payments as having been made in the identical amount on the date indicated under Item 3 of his Statement of Financial Affairs filed in his main bankruptcy case.[31]  Clearly, the Debtor has not concealed the transfers and there is a reasonable likelihood he will be able to establish the second element of the standing test.

### 3.    Did the Trustee Attempt to Avoid These Transfers?

The third element of the standing test requires the debtor to establish that the trustee has not attempted to avoid the transfers the debtor seeks to avoid.  Recall that

---

[30]  *In re Steck*, 298 B.R. 244, 248 (Bankr. D.N.J. 2003).

[31]  Case No. 12-11148, D.I. 1 (Statement of Financial Affairs at p. 2).

the trustee is the exclusive party empowered to bring avoidance actions but has little or no incentive to do so if the benefit will flow primarily or exclusively to the debtor.  The debtor's rights are a limited carve out from the trustee's exclusive authority and are designed to align the power to bring the actions with the incentive to do so.  If a trustee has attempted to avoid a transfer then the concern regarding incentive evaporates.  Also, allowing two parties to attempt to avoid the same transfer raises the risk of inconsistent judgments, the waste of judicial resources and due process concerns.

The question then becomes how long a debtor must wait, if at all.  Judge Walrath addressed this question in an unreported opinion in *Morrow v. Dow Finance Corp. (In re Morrow)*.[32]   In *Morrow*, prior to the bankruptcy, Dow Finance Corporation (the "Defendant") made a car loan to the debtor (the "Debtor").  When the Debtor defaulted on the loan, the Defendant obtained a judgment against the Debtor. It executed on the judgment and garnished the Debtor's wages.

On the same day that the Debtor filed bankruptcy under Chapter 7 she sent a demand letter to the Defendant requesting that it cease attaching the Debtor's wages and return all wages garnished within the 90 day preference period. The Defendant ceased the attachment of the Debtor's wages but did not return the previously garnished wages.  Five weeks after filing bankruptcy, the Debtor filed an adversary proceeding against the Defendant for the avoidance and recovery of the garnished

---

[32] *Morrow v. Dow Finance Corp.* (*In re Morrow*), 04-10909 MFW, 2004 WL 2830653 (Bankr. D. Del. Dec. 9, 2004).

wages. The Debtor alleged that the wages were exempt and, therefore, the garnishment of them was avoidable by her under sections 547 and 522(h) of the Code.

The Defendant filed a motion for summary judgment arguing that the Debtor lacked standing to bring the avoidance action because she had not satisfied the third prong of the section 522 test, *i.e.*, that the trustee has not attempted to avoid the transfers.  The Defendant asserted that the Debtor filed her action before the meeting of creditors was held and, therefore, before the permanent trustee was even appointed. The Defendant further argued that the "precipitous action" by the Debtor interfered with the trustee's right to bring the action in the first instance.  Indeed, the Defendant argued, the trustee's exclusive right to bring avoidance actions would be eviscerated by a finding that a debtor can file a preference action before the trustee is appointed and has had the chance to investigate and bring the action himself.

The Debtor countered that there is no temporal requirement in section 522(h); it simply says that the Debtor may avoid a preference if "the trustee does not attempt to avoid such transfer."  She further argued that the only requirement under section 522(h) is that at the time a debtor brings an avoidance action (and during its pendency) the trustee does not attempt to avoid the transfer subject to that action.  Moreover, the Debtor argued that waiting for an affirmative relinquishment by the trustee of his or her avoidance powers is impractical.  Typically, the only indication a debtor receives that the trustee will not be bringing a preference action is when the trustee files its final report abandoning the action and the case is closed. Thus, if the Debtor had to wait until

then she would be required to file a motion to reopen the case—a burden on herself and the Court.

Judge Walrath distinguished the cases cited by the Defendant[33] and, applying the plain meaning of the statute, ruled in favor of the Debtor. In addition, she noted that even after receiving notice of the filing of the complaint by the Debtor, the trustee did not file a motion to intervene in the action nor file his own preference action against the Defendant. Nor did the trustee object to the Debtor's exemptions, including the exemption of the wages which were the subject of the preference action. Finally, subsequent to the filing of the complaint, the trustee filed a notice of abandonment of all the assets of the estate, including the avoidance action.  Thus, Judge Walrath concluded that even if there were there a temporal requirement it would have been easily met by the time the issue was presented to the Court on summary judgment.

This Court concurs with Judge Walrath's decision.  Under the plain meaning of the statute, to satisfy the third prong of the test the debtor need only establish that at the time the debtor brings an avoidance action and during its pendency the trustee does not attempt to avoid the transfer subject to that action.  If the trustee decides to pursue avoidance of the transfer either through intervention in the debtor's action or by instituting his or her own, prong three cannot be satisfied, the debtor is stripped of standing and he or she must yield to the trustee.

---

[33] *Hartford Underwriters Ins. Co.*, 530 U.S. 1 (2000), *In re Price*, 173 B.R. 434 (Bankr. N.D. Ga. 1994); and *In re Wimbish*, 95 B.R. 379 (Bankr. W.D. Pa. 1989).

Moreover, the facts in this case are strikingly similar to those in *Morrow*. In this case, the Debtor filed bankruptcy on April 2, 2012. Mr. George Miller was appointed interim trustee on that date. The initial meeting of creditors was scheduled for April 30th but was continued to May 11th and then June 1st at which time it was concluded and Mr. Miller became permanent trustee. In the meantime, the Debtor filed the Preference Actions on May 25th. The trustee did not move to intervene, did not file his own action and did not object to the Debtor's exemptions.[34] The trustee filed his Report of No Distribution on June 8th, the Debtor received his discharge on July 2nd and the Court entered its Order Approving Trustee's Report of No Distribution, Abandonment Listed Thereon and Closing Case on September 19th. As in *Morrow*, any temporal requirement has been easily satisfied at this time. At the very latest, the Debtor would have been required to wait until the property was abandoned and the Chapter 7 case was closed, which occurred on September 19th. Thus, there is a reasonable likelihood that the debtor will be able establish the third element of the standing test.

### 4.    Is the Debtor Exercising an Avoidance Power Usually Used by the Trustee That Is Listed within Section 522(h)?

The Debtor seeks relief in the Preference Actions under sections 547, 550 and 502(d) and (j). Section 522(h)(1) lists the specific code sections that can be utilized by a debtor to avoid transfers: sections 544, 545, 547, 548, 549, or 724(a). Section 522(h) also specifies that section 553 is available to recover avoided transfers. In addition, section

---

[34] The Debtor exempted property in the amount of $22,058.00 under the wildcard exemption, *i.e.*, 10 Del.C. § 1409(b). See D.I. 1 (Schedule C – Property Claimed as Exempt). The Debtor did not list the proceeds of any avoidance actions as exempt property but has $2,942.00 available under the wildcard exemption that could presumably be applied to the proceeds of the Preference Actions.

522(i) provides that "[i]f the debtors avoids a transfer [under section 522(h)], the debtor may recover in the manner prescribed by, and subject to the limitations of, section 550 of this title, the same as if the trustee had avoided such transfer."

Section 502(d), in turn, provides that the "the court shall disallow any claim of any entity from which property is recoverable, under [section 550] or that is a transferee of a transfer avoidable under [section 522(h) or 547], unless such entity or transferee has paid the amount, or turned over the property, for which such entity is liable under [section 522(i) or 550]."  Finally, section 502(j) provides that a claim that has been allowed or disallow may be reconsidered for cause."  Any party in interest can invoke section 502(j).

As spelled out above, all the relief being sought by the Debtor is available under section 522(h). Thus, there is a reasonable likelihood the debtor will be able to meet the fourth element of the standing test.

### 5.      May the Property Be Claimed by the Debtor Under an Exemption?

Congress enacted section 522(h) of the Code to grant Chapter 7 debtors the limited right to pursue avoidance actions to aid such debtors in maximizing the property available for exemption.  As such, the debtor's standing to avoid and recover transfers is limited to property that the debtor would have been able to exempt from the estate if the trustee (as opposed to the debtor) had avoided the transfer.  The amount of any recovery to the debtor is limited by the available exemptions.  Any property in excess of the exemptions is available for the trustee to distribute to the debtor's creditors

or, if the trustee chooses not to administer the property, simply cannot be recovered from the transferee.

For example, in *Ryker v. Current (In re Ryker)*, a Chapter 13 debtor sought to avoid a foreclosure sale of commercial property as a fraudulent conveyance.  The bankruptcy court held that the debtor's right to pursue the avoidance action was limited to section 522(h) and applied the five factor test applicable to this case.  The debtor attempted to exempt the property under the New Jersey homestead exemption but the exemption was unavailable because the property was commercial.  In addition, the debtor had utilized his wildcard exemption to the full amount available.  As the debtor had no available exemption, the court held that he could not establish standing to pursue the action under section 522(h).

In this case, the Debtor has $2,942.00 available under his wildcard exemption.  His recovery of avoidable transfers under section 522(h) is limited to that amount.  Any recovery in excess of that amount is property of the estate to be administered by the trustee for the benefit of creditors.  As this is a "no asset" case it is quite probable that the trustee will choose not to further administer the estate.  If so, any amounts in excess of $2,942.00 cannot be recovered by the debtor or, if already recovered, must be returned to the transferee.

This rule exists to prevent the debtor from receiving a windfall.  All the property a Chapter 7 debtor is entitled to retain after bankruptcy is the property properly exempted under the law.  To allow a debtor to make payments to his creditors in the preference period in excess of the amount available under his exemption, to file a "no

asset" Chapter 7 case where creditors are receiving no recovery, and then to recover the pre-petition payments and, thus, expand his exemption beyond the applicable limits would, in effect, allow debtors to launder cash through the bankruptcy through the unusual step of paying his or her creditors pre-petition.

Consider this simple example. A debtor makes $10,000 in preferential payments. The debtor then files bankruptcy and exempts the full amount of property available, which is $25,000 under this example. The discharged debtor then successfully recovers the $10,000 in preferential payments.  He now has $35,000 in property – the $10,000 in cash plus $25,000 in exempt property.

But, had the debtor not made the payments, the $10,000 in cash would have been included in the $25,000 exemption leaving only $15,000 available to exempt even if the debtor had $25,000 in property that could otherwise be exempted.  At the end of the day, in the latter case, the debtor has property worth $25,000 - the maximum allowed under the law.

Clearly, to allow the debtor to recover property in excess of the available exemptions would be a perverse result and stand the bankruptcy process on its head. The creditors who received payment pre-petition should receive the benefit of the limitations on a debtor's exemptions.  In this case, there is a reasonable likelihood that the Debtor will be able to recover up to $2,942.00 to reach the maximum exemption of $25,000.00. And, to this extent, he will be able to satisfy the fifth element of the standing test.

### 6.    Conclusion Regarding Standing

Based upon the record before the Court, there is a reasonable likelihood the Debtor will be able to establish four of the required elements of the standing test. There is insufficient information, however, to determine whether the transfers were voluntary. As all five elements must be satisfied, there is not a reasonable likelihood the Debtor has standing to pursue the Preference Actions.

### D. Is There a Reasonable Likelihood the Debtor Will Prevail on the Merits of the Preference Actions?

Whether a debtor has standing to pursue an avoidance action is only half of the equation. In order to prevail, the debtor must also establish the elements of the actual avoidance action.  In this case, the Debtor must show there is a reasonable likelihood he will be able to establish the elements to avoid the transfers as preferences under section 547(b) of the Code.

This Court recently reviewed the standards governing pleading a case for an avoidable preference.  In *Anderson News, LLC v. The News Group, Inc. (In re Anderson News, LLC),* the defendant sought dismissal of a preference action under Rule 7012(b)(6) based upon plaintiff's failure to plead adequately three of the elements necessary to state a *prima facie* case to avoid a preference.[35]  As touched upon earlier, a complaint must satisfy the pleading standards adopted by the Supreme Court in *Twombly*,[36] and *Iqbal*,[37] as interpreted by the Third Circuit in *Fowler*.[38]

---

[35] *Anderson News, LLC v. The News Group, Inc. (In re Anderson News, LLC),* 2012 WL 3638785 (Bankr. D. Del. Aug. 22, 2012).

[36] *Bell Atlantic Corp v. Twombly*, 550 U.S. 544 (2007).

[37] *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).

Under *Fowler*, this Court is to "conduct a two-part analysis. First the factual and legal elements of a claim should be separated. The [court] must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions."[39]  The Third Circuit has further instructed that "[s]ome claims will demand relatively more factual detail to satisfy this standard, while others require less."[40]

The defendant in *Anderson News* argued that the standards established by *In re Valley Media, Inc.*,[41] and *In re Oakwood Homes Corp.*[42] were both more stringent and controlling.  In *Valley Media*, which was decided prior to *Twombly/Iqbal* and the Third Circuit's decision in *Fowler*, the court found that the following information must be included in a complaint to avoid preferential transfers in order to survive a motion to dismiss: (a) an identification of the nature and amount of each antecedent debt and (b) an identification of each alleged preference transfer by (i) date, (ii) name of debtor/transferor, (iii) name of transferee and (iv) the amount of the transfer.

In *Oakwood Homes*, which was decided after *Twombly/Iqbal* and *Fowler* and indeed cited to those cases, the court reiterated the standard articulated in *Valley Media* as

---

[38] *Fowler v. UPMC Shadyside,* 578 F.3d 203 (3d Cir. 2009).

[39] *Id.* at 211 ("[A] complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to 'show' such an entitlement with its facts.") (internal quotations and citations omitted). *See also Buckley v. Merrill Lynch & Co., Inc. (In re DVI, Inc.),* 2008 WL 4239120 at *4 (Bankr. D. Del. Sept. 16, 2008) ("The plaintiff must put some 'meat on the bones' by presenting sufficient factual allegations to explain the basis for its claim.").

[40] *In re Ins. Brokerage Antitrust Litig.,* 618 F.3d 300, 361 (3d Cir. 2010). *See also Arista Records LLC v. Doe,* 604 F.3d 110, 120–21 (2d Cir.2010) (stating that *Twombly* and *Iqbal* require factual amplification where needed to render a claim plausible, not pleadings of specific evidence or extra facts beyond what is needed to make a claims plausible).

[41] *In re Valley Media, Inc.* 288 B.R. 189 (Bankr. D. Del. 2003).

[42] *In re Oakwood Homes Corp.,* 340 B.R. 510 (Bankr. D. Del. 2006).

governing motions to dismiss preference actions.  At the same time, however, the *Oakwood Homes* court noted that in *Valley Media* it had rejected the argument that a complaint should also prove: (1) how Defendant is considered a creditor; (2) how an interest in the property was transferred to the Defendant; (3) that Plaintiff owed Defendant an antecedent debt; and (4) how the transfers enable Defendant to receive more than it would have in a Chapter 7 liquidation.

While reiterating that *Twombly/Iqbal* and *Fowler* set forth the governing standard, the *Anderson News* court held that, subject to the facts of a particular case, the factors identified in *Valley Media* and *Oakwood* were entirely consistent with *Twombly/Iqbal*.[43] The Court further held, however, that those factors were not to be strictly applied.[44]

Applying the governing pleading standard to the Preference Actions it is readily apparent that the complaints are deficient.  For example, there is no identification as to the nature of the debt owed to the transferee, no loan or account number, no invoice number or date, and no facts surrounding the transfer.  The complaints merely identify the transferee, its address and the amount and date of the payment.  These bare-bones allegations are insufficient.  Thus, it is unlikely that the Debtor will prevail on the Preference Actions.

<u>CONCLUSION</u>

The Court has concluded that, based upon the facts before it and the allegations contained in the complaints, there is not a reasonable likelihood the Debtor will be able

---

[43] *Anderson News* at *6-7.

[44] *Id.*

to establish standing nor prevail on the Preference Actions.  It is possible, however, that the Debtor may be able to cure the deficiencies in the complaints through amendment. The opportunity to amend a complaint is to be freely given and that is particularly true in this case where the Court has not previously ruled on the application of section 522(h).

Thus, the Court will grant the Motion to Reopen and will immediately reopen the Chapter 7 case and Preference Actions.  However, within 28 days of reopening of the Chapter 7 case and the Preference Actions the Debtor must amend his complaints in the Preference Actions to plead standing to pursue those actions under section 522(h) and to more fulsomely plead the elements of the underlying Preference Actions.  Any adversary proceeding in which an amended complaint consistent with this opinion is not filed in the time allotted will result in its dismissal with prejudice.  Failure to file an amended complaint consistent with this opinion in at least one of the adversary proceedings will also result in the closure of the Chapter 7 case with prejudice.

An order will be issued.